IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARK WIKER** | : CIVIL ACTION |
| | : |
| | : |
| **v.** | : NO. 24-2592 |
| | : |
| **LANCASTER GENERAL HEALTH, et al.** | : |

**MEMORANDUM**

**SCHMEHL, J.   /s/ JLS**                                                      **DECEMBER 13, 2024**

      Plaintiff brought this action, claiming he was terminated from his employment with Defendants as a registered nurse because of his disability (injuries sustained in a motor vehicle accident), age (over 40 years old) and sex (male). Named as Defendants are Lancaster General Health d/b/a Penn Medicine Lancaster General Health ("LGH") and the Trustees of the University of Pennsylvania d/b/a Penn Health ("Penn"). Plaintiff claims that the Defendants' alleged actions violated the Americans with Disabilities Act ("ADA") (Count I), Title VII of the Civil Rights Act-Sex Discrimination (Count II), the Age Discrimination in Employment Act ("ADEA") (Count III), and the Pennsylvania Human Relations Act-Age, Sex and Disability Discrimination ("PHRA") (Count IV). Plaintiff has also asserted a count for retaliation under Title VII, the ADEA, the ADA and the PHRA (Count V). Presently before the Court is Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss Counts I-IV of the First Amended Complaint for failure to state a claim. For the reasons that follow, the motion is granted.

      To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937,

1

173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679, 129 S.Ct. 1937 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

Plaintiff is a male adult individual over the age of 40. ECF 6-1 at 3. Plaintiff was hired as a nurse by LGH in 2001 and started as a registered nurse in LGH's intensive care unit. *Id*. at ¶24. On September 13, 2021, Plaintiff allegedly sustained serious injuries as the result of a motor vehicle collision outside the LGH Sleep Center. *Id*. at ¶27. As the result of the motor vehicle accident, Plaintiff suffered physical and mental impairments that substantially limited him in one or more of the major life activities, including caring for himself, walking, seeing working, sitting, lifting and standing. *Id.* at ¶30. The injuries also

affected Plaintiff's neurological and neuromuscular systems. *Id.* at ¶31. From September of 2021 through March 2022, Plaintiff was "placed on light duty, and reassigned to thermal screening of persons visiting LGH in response to the COVID-10 Public Health Emergency." *Id*. at ¶28.

On April 5, 2022, Plaintiff was contacted by Defendants' Nurse Manager, regarding the need for Plaintiff to complete "annual competencies." *Id*. at ¶33. Plaintiff advised that his injuries from the motor vehicle accident were preventing him from working on a computer and the Nurse Manager and Assistant Nurse Manager suggested he complete his competencies at home with the assistance of family members. *Id*. at ¶35.

On April 14, 2022, Plaintiff submitted his application to renew his nursing license with the Pennsylvania Department of State ("DOS"). *Id.* at ¶36.  Plaintiff alleges that at that time, Defendants "had cut-off [his] network access, thereby interfering in his ability to complete his license renewal." *Id.* at ¶37.  Plaintiff alleges that his network access was restored on April 20, 2022 and that within five days, he had completed half of the required competencies. *Id*. at ¶38. Plaintiff alleges that on April 25, 2022, Defendants' Compliance Team again reminded Plaintiff that his registered nurse license was about to expire even though Plaintiff "had already started the renewal process and was actively working on competencies despite the ongoing consequences of his injuries from the [motor vehicle accident]." *Id.* at ¶39.

On April 27, 2022, Plaintiff informed the Compliance Team that he was working on his license renewal and "needed their assistance to complete the child abuse portion of license renewal." *Id. at* ¶40.  The Compliance Team responded that they "do

3

not share information with the state," and therefore could not help Plaintiff with that process. *Id*.

On May 9, 2022, Plaintiff underwent eye surgery as the result of the injuries he sustained in the motor vehicle accident. *Id. at* ¶41. Plaintiff alleges that on May 10, 2022, his access to the network was inexplicably blocked again. *Id.* at ¶42. He alleges that between April 27, 2022 and June 15, 2022, he pressed his nursing managers about the delays he was having in completing his license renewal. *Id*. Plaintiff alleges that in early June, he was in regular contact with the DOS about the technical issues he was having in completing his license renewal. *Id.* at ¶43. He also alleges that he was in regular contact with his Nurse Manager who told Plaintiff that she would work with him and provide the necessary time for him to complete the requirements of his license renewal. *Id.* at ¶44.

On June 16, 2022, Defendants, via email, spontaneously imposed a deadline of June 20, 2022 for Plaintiff to complete the license renewal process. *Id.* at ¶45. In the same email, Defendants for the first time offered assistance by providing a link to "approved providers below (link) that count towards continuing education credits for professional licenses." *Id.* at ¶46.

On June 21, 2022, Defendants terminated the Plaintiff's employment without providing a reason. *Id.* at ¶47. On July 21, 2022, with the assistance of Plaintiff's State Senator, the DOS renewed Plaintiff's license retroactive to June 20, 2022. *Id.* at ¶48. Despite the reinstatement of Plaintiff's license as of June 20, 2022, the Defendants refused to reinstate him. *Id.* at ¶55.

Plaintiff alleges that the June 20, 2022 deadline was arbitrarily imposed by Defendants because he was a qualified individual with a disability with whom the Defendants did not wish to have an interactive process, he was a male, and he was over 40 years of age. *Id.* at ¶105.

Plaintiff alleges that because he repeatedly complained that his termination was discriminatory, Defendants retaliated against him by opposing his application for unemployment compensation benefits. *Id.* at ¶¶50,51. Plaintiff further alleges that Defendants retaliated against him by claiming before the Unemployment Compensation Board of Review Referee that Plaintiff was terminated for "willful misconduct" and by presenting "manipulated documents" to the Referee. *Id*. at ¶¶52,53. Plaintiff further claims the Defendants retaliated against him by refusing to hire him for two positions for which he claims he was qualified, *id*. at ¶¶56-59, and that Defendants fabricated a third application for employment which contained factual inaccuracies. *Id.* at ¶61,62. Plaintiff alleges that instead of rehiring him, Defendants hired a less-qualified, younger, female applicant who did not have a history of a disability. *Id.* at ¶¶ 59, 60, 118.

Under the Pennsylvania Professional Nursing Law and the Pennsylvania State Board of Nursing's regulations, all registered nurses must maintain an active license. *See* 63 P.S. § 213(a) (precluding those without a license to practice professional nursing in the Commonwealth from the practice of professional nursing); *see also* 49 Pa. Code § 21.1 (defining "[r]egistered nurse" as a "[a] nurse **licensed** under this subchapter to practice in this Commonwealth.") (emphasis added).

In Pennsylvania, registered nursing licenses expire every two years, either on April 30 or October 31. *See* 49 Pa. Code §21.29(a). "Notice of the renewal period of a

5

license will be sent to each active licensee prior to the expiration date of the licensee's license." *See* 49 Pa. Code § 21.29(b).

In addition, in order to maintain an active license, a registered nurse must meet the requirement of continuing education as follows:

> (a) *Requirement of continuing education.* A registered nurse seeking licensure renewal shall complete 30 hours of continuing education approved by the Board during the biennial period immediately preceding the application for renewal in accordance with section 12.1 of the act (63 P.S. § 222) and this subchapter. At least 2 of the 30 hours shall be completed in approved continuing education in child abuse recognition and reporting requirements in accordance with § 21.508(b) (relating to child abuse recognition and reporting-- mandatory training requirement). The Board will not renew a license of a registered nurse who fails to verify compliance with the continuing education requirement. A registered nurse whose license is not renewed by the expiration of the biennial period may not engage in the practice of professional nursing until the continuing education requirements are satisfied and the license has been renewed, reinstated or reactivated.

49 Pa. Code §21.131(a).

> (g) *Waiver.* A registered nurse may request a waiver of the continuing education requirement because of serious illness, military service or other demonstrated hardship. The registered nurse shall submit the request and any supporting documentation to the Board in writing at least 90 days prior to the registered nurse's license expiration date unless an emergency or hardship occurs within the 90-day period. The Board will grant, deny or grant in part the request for waiver.

49 Pa. Code §21.131(g).

A regulation for the Equal Employment Opportunity Commission ("EEOC") provides that a "qualified individual with a disability" is one "who satisfies the requisite skills, experience, education and other job-related requirements of the employment

position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). Our Court of Appeals has previously adopted the EEOC's two-step inquiry as the test for whether an individual is qualified within the meaning of the ADA. *McNelis v. Pa. Power & Light Co.*, 867 F.3d 411, 415 (3d Cir. 2017); *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir. 1998) (*en banc*). Under the first step, the Court must determine whether the plaintiff "satisfies the prerequisites for the position such as possessing the appropriate educational background, employment experience, skills, licenses, etc." 29 C.F.R. pt. 1630, app. § 1630.2(m); *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). Under the second step, the court must consider "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id.*

      Here, Plaintiff is not qualified under the first step. Plaintiff's registered nursing license expired on April 30, 2022. See 49 Pa. Code §21.29(a). While Plaintiff began the renewal process on April 14, 2022 by submitting his application for renewal to the DOS, he was unable to complete the continuing legal education requirement by April 30, 2022. It appears Defendants worked with Plaintiff for nearly two months after the April 30, 2022 deadline to get his requirements completed but finally imposed a new deadline of June 21, 2022. Plaintiff alleges that his "light duty" work lasted until March of 2022. at ¶28. He does not allege in the First Amended Complaint what, if any, type of work he was performing thereafter until the date of his termination.[1]

---

[1] Furthermore, the Defendants could have exposed themselves to a claim of corporate negligence or corporate liability had they allowed Plaintiff to perform the duties of a registered nurse with an expired license.

**7**

By Plaintiff's own account, he had not renewed his nursing license at the time he was terminated on June 21, 2022. Nor are there any allegations in the First Amended Complaint that Plaintiff ever requested 90 days prior to the expiration of his license on April 30, 2022 a waiver from the State Board of his continuing legal education requirement due to serious illness or other hardship such as the technical issues he alleges the Defendants were causing him in renewing his license. The DOS is simply not required, as Plaintiff suggests, to ensure that a registered nurse takes the proper steps to renew his license. As a result, Plaintiff lacked the job-related requirement of being licensed as a registered nurse as required by Pennsylvania law. Accordingly, at the time he was terminated, Plaintiff was not a "qualified individual with a disability."

Likewise, in order to maintain claims for gender-based or age-based discriminatory discharge under Title VII or the ADEA, a plaintiff must allege facts demonstrating that he was qualified for his position *See Fowler v. AT&T, Inc.*, 19 F.4th 292, 303 (3d Cir. 2021) (ADEA); *Coleman v. Pennsylvania State Police*, 561 Fed. Appx. 138, 143-46 (3d Cir. 2014) (Title VII). As discussed, *supra*, Plaintiff has failed to establish that he was qualified for his position at the time he was terminated on June 21, 2022.

Plaintiff argues that since the State Board later retroactively reinstated his nursing license as of June 20, 2022, he was actually qualified as of the day of his termination on June 21, 2022.

However, the determination of whether a plaintiff is qualified for the position in question is made at the time when the challenged employment action actually occurred. See 29 C.F.R. pt. 1630, Appendix at § 1630.2(m) ("The determination

of whether an individual with a disability is qualified is to be made at the time of the employment decision."); *Gaul*, 134 F.3d at 580 ("The determination of whether an individual with a disability is qualified is made at the time of the employment decision.") (quoting 29 C.F.R. pt. 1630, Appendix at § 1630.2(m)); accord *Barclay v. Amtrak*, 435 F. Supp.2d 438, 445 (E.D. Pa. 2006) (noting that the ADA only prohibits employers from discriminating against disabled employees who, at the time of termination, could perform the job

Again, it is undisputed that on the date he was terminated, June 21, 2022, Plaintiff was not licensed to practice as a registered nurse in the Commonwealth of Pennsylvania. It does not matter that on July 12, 2022, the DOS renewed Plaintiff's license retroactive to June 20, 2022. Since Plaintiff was not licensed at the time his termination occurred on June 21, 2022, he simply was not a qualified individual with a disability for purposes of the ADA and simply was not a qualified individual for purposes of the ADEA, Title VII and the PHRA.

For the foregoing reasons, the Defendants' motion to dismiss Counts I-IV of the First Amended Complaint is granted. Count V, asserting claims for retaliation, shall remain.